Reese, J.
delivered the opinion of the court.
This action is brought to recover the tract of land in the pleadings mentioned, claimed by tbe lessor of the plaintiff, as heir and devisee of one James Britain, deceased. The defendant claims the same tract, under the decree of the Chancery Court at Franklin, subjecting the same, upon a creditor’s bill, to sale for the payment and satisfaction of the debts of the testator, James Britain. If that decree be valid, or if it be not void as against the lessor of the plaintiff, then he has no right whatever to recover in this action. It is contended on his behalf, that it is void, and this upon three grounds:
"1st. The want of jurisdiction in the Court of Chancery over the subject matter of the cause. ■'
*316 2d. That Joseph H. Britain, who is mentioned in the bill, and in other proceedings in said cause, as the general guardian of the lessor, Jason T. Britain, and made a defendant in said bill, along with the said Jason T. the minor, in that character, was not the general guardian of said Jason T., legally appointed. And,
3d. That said Jason T. was not so served with process in that cause, as that the decree will bind him.
The first ground of objection is founded upon the fact, that the land mentioned in this suit, and in the Chancery suit, lies in the county of Bedford, and that Bedford county, at the time of the institution and pendency of said Chancery suit, constituted no part of the Chancery district for the Court held at Franklin; and that the statutes conferring upon the Chancery Courts jurisdiction in such cases, require that the bill should be filed in the Chancery district in which the land lies.
But it is argued on the other side, that the Court of Chancery at Franklin, in which district some material defendants lived, and were served with process, had jurisdiction upon general chancery principles, independently of the special and local jurisdiction given by the statutes: because the bill expressly alledged, that the testator made his whole estate real and personal, by the terms of his will, subject to the payment of his debts; and if the Chancellor erred in construing the will as evidence so as to maintain this allegation of the bill, such error, although it might have produced a reversal of the decree on the ground of jurisdiction, would, nevertheless, not render the decree void in a collateral proceeding.
Assenting to the correctness of this position, we do not deem it necessary to enquire, whether what is said in the will, on the subject of the payment of debts shall have the effect to render the real estate equitable assets, and subject it as a fund to the satisfaction of the claims against the testator.
There is nothing, then, we think, in the first ground to render the decreb invalid and void.
In the second place, it is said, that Joseph H. Britain was not legally appointed the guardian of Jason T. Britain.
The record of his appointment is as follows: “State of Ten *317 nessee, Bedford county, November term, 1833. Present, George Davidson, Chairman, Samuel Philips, James Ewing and others, Justices of the Peace for .said county. Proclamation being made, &c. Ordered by the court, that Joseph H Britain be appointed guardian of Jason T. Britain, upon condition; and he gave bond and good security in the sum of thirty thousand dollars, on or before the second Monday of this court.”
There was found among the files of guardian bonds, a bond filled up in the hand writing of the Clerk, who is dead, and the Clerk’s fee endorsed as paid, signed and sealed by Joseph H. Britain, and by James Williams, who is proved to have been his father-in-law, and made payable to George Davidson, the Chairman of the County Court, in the penalty of thirty thousand dollars, conditioned for the faithful performance of the duties of guardian to Jason T. Britain by the said Joseph H. Britain, being in all respects a formal guardian’s bond, and being dated the same day of the month and of the term with the above entry of appointment.
Other records were produced, showing that the said Joseph H. Britain made subsequently several settlements with the County Court, as the guardian of Jason T. Britain. These records taken all together, establish not only, that the said Joseph H. Britain was guardian of the said Jason T., as between him and the said Jason T., but also guardian of his person and estate, as it related to, or might affect all others in their dealings with and proceedings against the said estate.
As to the entry of appointment, there is no doubt, that it Was first made, “upon condition, that he give bond with good security, on or before the second Monday of the term.” If it had remained so, and he had given bond, as he did, the appointment would have been valid. But coming in subsequently the sameylay, and giving bond, the Clerk, upon the entry already made, interpolated the condition, “and he gave bond,” &c., without striking out other words necessary so to have been striken out, to render the entry free from obscurity. So we are of opinion, that there is nothing in this second ground, to destroy the validity of the decree.
It is said, in the third place, that the lessor of the plaintiff *318 was not duly made a party to the suit in chancery. The bill states his interest in the estate as devisee, and heir; that he was a minor; that Joseph H. Britain was his general and regular guardian; and it prays, that the minor may be made a party-defendant, and also Joseph H. Britain in his character as guardian. A subpoena citing Joseph H. Britain, guardian of Jason T. Britain, to appear in said cause, was duly served upon said Joseph H., and a copy of the bill left with him. It is said that a subpoena ought to have been served, also, upon the minor personally. There is no statute, and there is no case, which directs it to be done, or holds it to be necessary.
In England they have no general guardians like ours, but suits are defended by guardians ad litem, on behalf of minors. Their course of practice is to serve the subpoena upon the minor; the substantial purpose for which is to apprise adult friends and connections of the commencement of a suit, to the end, that they may select and nominate to the court a suitable guardian ad litem. But even there, where the process cannot be served upon the infant, service upon a mother, step-father, or other relative has been held good. But here, under our system, the general guardian represents the entire estate of the minor, and also his person, of which, as well as of his estate, he has legal custody, and is under bonds, and personally responsible to his ward, if he neglects his interests in any litigation touching his estate. And the infant must appear and defend under him'. Under such circumstances, and in such a system, would it not be strange to hold a decree void, to which the minor, by prayer in the bill and service of process upon the guardian, had been made a party, because not served personally with process?
As we have said, there is no statute affecting the question, as relates to a Court of Chancery; there is no practice on the subject in our State, or elsewhere, where general guardians are to be found, prescribing personal service upon the minor.
A Court of Chancery cherishes forms no further than as they contribute to the main object of its existence, the attainment of substantial justice. It struggles against technical rules, which- merely impede this object. It is enabled from its mode *319 of practice, to see, from time to time, that necessary parties are brought before it; and this it can do at .almost any stage of a suit. It has its own modes, and can vary them according to the exigency, of giving notice of the progressive steps of its action. A court of law should, therefore, see its way very clearly before it would hold a decree -void upon such grounds as are insisted on in this record, when the decree comes collaterally before it. It is said, this court has held in many cases, that the minor as well as his guardian, must be personally served with process of sci. fa. to subject his land. This was so held, because the court thought it was lex scripta, positive statutory provision, exacting their simple obedience. But there is no reason why this statutory provision should be extended by construction or analogy to suits in equity.
• We beg leave to make one general observation. Our ministerial officers, clerks, sheriffs, &c. are of a very brief and mutable character: From which it results, that much of the public business is crudely and inartificially Hone; and papers and records committed to the custody of new officers, from time to time, are likely to be incautiously kept.
In this state of things, we have strong motives of public policy, to cherish substance more than forms, and to hesitate long, and insist upon a clear case, before we pronounce the decrees and judgments of our courts of record void, when brought collaterally in question.
We affirm this judgment upon all the grounds.